THE MECHANICS' AND TRADERS' BANK ·OF ROME *et al. vs.* HARRISON, executor, *et al.*

| 68 | 463 |
|----|-----|
| 91 | 339 |

| 68 | 463 |
|-----|-----|
| 110 | 633 |
| a111 | 556 |
| 111 | 890 |

| 68 | 463 |
|------|-----|
| a112 | 422 |
| 112 | 758 |

| 68 | 463 |
|-----|-----|
| 130 | 512 |

1. A case·may be brought to this court upon the rendition of a final judgment therein, or upon the refusal of a judgment which would have finally disposed of the case had it been rendered as contended for by the excepting party.

(*a.*) Interlocutory exceptions cannot be considered in this court until a final disposition of the case in the court below. Therefore, on exception to the overruling of a demurrer to a bill in equity, interlocutory exceptions to rulings made in the progress of the case prior to the demurrer cannot be considered.

(*b.*) Permission granted to file such exceptions *pendente lite.*

2. Where some of the defendants to a bill in equity except to the overruling of a demurrer to the bill, they need not serve their codefendants with the bill of exceptions.

3. On the hearing of the application for injunction, the question concerns the granting of that writ alone, and a decision on it does not preclude a demurrer filed thereafter for want of equity in the bill.

4. That certain exceptions cannot be heard will not work a dismissal of the writ of error, if other exceptions properly taken remain.

5. Where the proper management of a trust estate, the execution of its trusts and the determination of claims against it were involved, a bill for direction and to prevent a multiplicity of suits was not without equity.

6. A foreign executor may sue in this state like any other litigant, upon complying with the conditions required of him.    Code, §2414.

7. The will of a non-resident which conveys realty in this state, is to be construed as to such realty in accordance with the laws of this state.

Practice in Supreme Court.    Administrators and Executors.    Wills.    Before Judge SNEAD.    Richmond Superior Court.    October Term, 1881.

To the facts reported in the decision it is only necessary to add the following:    Harrison, executor, filed his bill against the Mechanics' and Traders' Bank *et al.*, praying an injunction to restrain certain creditors of the estate, and of one of the distributees thereof, from proceeding to enforce their claims, and praying also for direction as to distribution of assets, and conduct of administration. Certain of the defendants demurred to the bill.    On the hearing of the demurrer the court overruled it, but struck cross-bills which had been filed by defendants, on demurrer by complainants.    The demurring defendants excepted. Prior to this ruling, certain interlocutory rulings had been made referring the case to a master, etc., and on exception error was assigned on this, and the striking of the cross-bills, as well as the main ruling.    All of the defendants were not served with the bill of exceptions.    On argument in the supreme court, a motion was made to dismiss the bill of exceptions on the grounds stated in the first four divisions of the opinion, which was decided as therein set forth.

F. H. MILLER, for plaintiffs in error.

W. W. MONTGOMERY; BARNES & CUMMING, for defendants.

SPEER, Justice.

1. This case comes before this court on a judgment overruling a demurrer to the bill of complainants. The writ of error brings that issue here properly, because, if the demurrer had been sustained and the case dismissed, there would have been an end to the controversy. But, each party has excepted to other rulings of the court interlocutory in their character, such as reference to the master and demurrer to answers in the nature of cross-bills by the defendants. These exceptions cannot be heard on this writ of error, because they can only be reviewed when the final hearing of the case has been had. See Code, §4250. The language of that section is—speaking of these interlocutory exceptions—"and should the case at its final termination be carried by writ of error to the supreme court, by either party, error may be assigned upon such bills of exceptions and a reversal and new trial may be allowed thereon, when it is manifest that such error or decision of the court has or may have affected the final result of the case."

So that it is too clear for argument, that these interlocutory exceptions cannot be heard until the final termination of the case in the court below. If either party has not filed the exceptions as interlocutory, but has embodied them in the bill of exceptions now brought here, he may still file them in the court below, and make them of record, so as to be brought up for review on the final termination of the cause, should that termination of it come to this court for review. (64 *Ga.*, 740; *Standford vs. Treadwell*, present term.) Therefore, the only question to be now reviewed is the demurrer to the original bill.

2, 3, 4. A motion was made to dismiss this writ of error

on three grounds, first, that the defendants were not served. They need not be served because other defendants have brought this cause, and they need only to serve the complainants, especially when they demur to the bill for want of equity. Second, because the bill of exceptions was not certified within thirty days from that decision rendered, whereby alone the court could adjudicate the point, which it is claimed was when the court passed upon the injunction.

But, on the application for injunction at chambers, the sole question is the grant or refusal of that writ. No judgment overruling the demurrer was then rendered, and none could have been rendered (58 *Ga.*, 184), on the mere application for injunction. Thirdly, because the exceptions come up by piecemeal. We have lopped off the pieces, and the only one left is as to overruling the demurrer to the original bill. We, therefore, overrule the motion to dismiss this writ of error, as to the question we now shall and can only review, and to that we now address ourselves.

5. Complainant below, as a foreign executor of his wife, Mary G. Harrison, who died in New Jersey, in conjunction with certain legatees under her will, filed their bill against various defendants, creditors of the testatrix, and also creditors of certain legatees under the will, in which he alleges that creditors by numerous suits, both by attachment and at common law, are levying upon certain property of the estate, seeking to subject the interest of said legatees in said property to their debts. It is alleged that Mary G. Harrison, the testatrix, formerly Jones, and her sister, Sarah F. Gardner, were tenants in common, by inheritance to a large amount of real estate in the city of Augusta; that on the marriage of said Sarah and Mary G., with their husbands, all their interest in said property was conveyed to trustees in said deeds named to their separate use, with certain powers, limitations, etc.; that soon after the marriage of Mary G., a partition of

said lands was had, between her and her sister. After said partition, Sarah, under power in the marriage settlement, sold to the trustees of Mary G., in consideration of two bonds of $40,000.00 each and an annuity of five thousand dollars to R. H. Gardner and his wife, Sarah Gardner, to be paid to them during their joint lives and to the survivor, the entire interest held by them under the marriage settlement of Sarah Gardner. The object of the sale was, first, to secure said annuity to Gardner and wife, and, secondly, to create an indebtedness from the trust estate of Mary G. Harrison, for the benefit of those entitled to said trust estate of Mrs. Gardner in remainder. It is charged the annuity of $5,000.00 was regularly paid to Gardner and wife jointly, to the death of Mrs. Gardner, in 1869, and since to R. H. Gardner. Mrs. Gardner died, leaving as her blood heirs the testatrix, then living, and her brother, Geo. N. Jones. Testatrix died in 1875 and the brother died in 1878.

Complainant is advised one of the two bonds of $40,-000.00, payable upon the death of Mr. Gardner, has, by the terms of Mrs. Gardner's marriage settlement, become the property of testatrix's estate, and has thus become extinguished, but the other bond is a valid claim against her estate, payable on the death of R. H. Gardner, and that the annuity of $5,000.00 is a yearly subsisting claim against testatrix's estate during the life of R. H. Gardner.

The legatees, under the will of testatrix, are the Protestant Episcopal Church of the Diocese of Georgia, the complainant and his three sons; their several interests appear by the will exhibited.

Complainant alleges that, supposing the estate in his hands as executor was ample to meet its debts due Gardner and Jones, and desirous of providing for W. H. Harrison, Jr., who had arrived at age, he executed to him certain conveyances of portions of the real estate of testatrix as appears by deeds attached, and which was about in value what his share in said estate was after making al-

lowance for claims against the estate—except it was under-derstood that the rents of the property so conveyed were to be reserved to aid in paying the annuity to Gardner. He alleges much of the real estate left is unimproved and unproductive and subject to annual taxes of $3,000.00 or more, and that the whole income is not quite suffi-cient to pay the necessary expenses of the annuity, and if the property conveyed to Harrison, Jr., is withdrawn from the estate, the income of the remainder will be wholly in-sufficient to meet the charges upon the property. Harri-son, Jr., has mortgaged the property conveyed to him to certain trustees to secure the payment of $30,000.00 of bonds issued by him, which have become due, and fore-closure is threatened. He has likewise mortgaged certain portions of said property to Warner, trustee, to secure the payment of certain notes he (Harrison, Jr.,) indorsed for Hazleton & Harrison to the amount $18,000.00, all of which are due and protested.

The Mechanics' and Traders' Bank have garnished complainant, individually as executor, on account of a debt due it by Harrison, Jr. Other parties have sued complain-ant individually and threaten to levy on his interest in the estate of testatrix. He cannot permit his interest or that of the property conveyed to W. H. Harrison, Jr., to be levied on and sold by attachment and general judg-ments until provision is first made for the creditors and other legatees of the estate.

Complainant charges that various judgments have been obtained by the individual creditors of complainant against him, and also against W. H. Harrison, Jr., and are being levied on their interest in said estate, the interest of com-plainant being a one-third undivided interest in fee and a life interest in the other two-thirds of all of said lands. Said property so levied on being part of the estate of his testatrix. Other suits now pending against him and W. H. Harrison, Jr., will soon go to judgment, and if levied upon the property of the estate (and there is none other

to levy upon) will greatly embarrass the administration of the estate.

Discovery is waived ; a decree is sought for directions instructing him, in view of the conflicting claims of the defendants, how to administer the estate of testatrix ; that defendants may establish their priorities and show to what extent they can legally subject the assets of said estate to the payment of their claims ; that the rights of creditors and legatees may be protected, and also a gen· eral prayer for relief.   A prayer for injunction against the defendant is also asked for.   To this bill various exhibits referred to in the bill are attached.

The court on a hearing granted the injunction as prayed for.   Certain of the attaching creditors thereafter filed their demurrer to said bill.

(1.) For want of equity.

(2.) Want of proper parties.

(3.) Because there is an adequate remedy at law.

(4.) From failure of complainant to attach certain papers to his bill referred to, in compliance with the 4th rule in equity.

The bill is filed by the executor, seeking the aid of a court of chancery to direct him as to the execution of the will of his testatrix, and determine in what manner he shall execute the same, with a view to protect the interest of those who have claims against the estate of his testatrix, not only as creditors but as legatees under her will, and at the same time to adjust the rights of that numerous class of creditors of two of those legatees whose interest as such in said estate they are seeking to subject to their debts.

In the case of *Miles & Co. vs. Peabody, administrator,* 64 *Ga.,* 729, this court held : "Where questions of advancement to heirs at law of ·a deceased, and the amount due to each, and the claims of the creditors of the estate and one of the heirs by attachment and otherwise and their priorites, all had to be determined before an administra-

tor could move safely in disposing of the estate, a bill by him against the heirs and creditors for direction and distribution is not without equity."

From the allegations in this bill, it appears that this will was executed in Georgia; that subsequently the testatrix removed to New Jersey, and there died. That the probate of the will was had there and letters were granted there. That the executor has returned and resumed his domicile here, and with the whole estate of his testatrix in this state is seeking to execute his trust here. In the language of a former decision of this court, we· might well say, this cause revolves around two centres, one that of the testatrix where creditors and legatees are contending for the estate as being preferred claimants, and the other are the creditors of W. H. Harrison, Sr., and W. H. Harrison, Jr., as legatees. To divide or administer this estate among these contesting claimants so as not to involve this executor in danger and loss, the interposition of chancery, we think, might well be invoked. To distribute both according to law, makes the task more difficult and necessitates the aid of equity on its general jurisdiction of all matters of trusts, as well as that which arises from a state of things which would multiply suits, and waste the estate in expenses and costs. This executor charges if these suits are allowed to proceed and the interest of these legatees are seized and sold, it will wholly disable him from paying this annuity due from the estate of his testatrix to R. H. Gardner of $5,000.00 during his life, and the bond debt of $40,000.00 maturing to the estate of Noble at the termination of the life estate of Gardner. These creditors have a prior and preferred claim to be secured from this estate prior to all others and equity should interfere to protect them.

It is claimed, however, that there are no proper parties to this bill, and this is the second ground of demurrer. In other words, this executor being a foreign executor, it is said, cannot maintain this suit.

Section 2450 of the Code declares, " That these foreign executors shall be entitled to use all the processes and remedies prescribed by the laws of this state in the same manner as if qualified under the laws of this state." In construing this section of the Code, in 44 *Ga.*, 38, this court ruled, "that when an exemplification of the probate of a will in another state is filed (as has been done in this case) in the clerk's office, under the provision of the 2414th section of the Code, properly authenticated according to the law of the state of the testator's domicile, it is sufficient to authorize the executors to sue in the courts of this state." There is nothing in the act of 16th December, 1878, to modify or change this provision of the Code as contended for by counsel for plaintiff in error as to these remedies. Under our view of the complications and embarrassments of this administration, we can see no adequate remedy at law to meet the varied issues, etc., that will arise in the administration of this estate; but a court of chancery, with its ample and comprehensive methods of relief, alone can embrace them and settle them under one general decree.

It is claimed that there were not all of the exhibits attached to complainant's bill as required by the fourth rule of equity. While this may be true, it is in the power of the court below to require this to be done on terms, and we presume this will be done in time, in the discretion of the chancellor.

But it is also insisted that as this bill is filed by a foreign executor, and the will was admitted to probate in New Jersey, where testatrix died, that the executor should have invoked the laws of New Jersey under the comity of states to have aided in the execution of this trust, and that the provisions of this will are to be construed by the laws of that state. While such might be the rule in the bequest of personal estate, we do not think it applicable to real estate within this state. In the case of *Kerr vs. White, executor*, 52 *Ga.*, 362, it was held that where a will is executed and admitted to probate in Tennessee

in conformity with the laws of Georgia, devising certain lands in this state to A B in trust for the testator's children, the trustee takes the title to the land under our law clothed with the trust for the beneficiaries, and the laws of Tennessee, prescribing upon what terms the trustee shall enter upon the execution of the trust, have no application. Touching devises in wills in foreign jurisdictions of lands situated in this state, the *lex fori* obtains and not the *lex loci.*

Judgment affirmed.