13806.  HAYMANS v. BENNETT, superintendent, for use, etc.

No defense to the note sued on was made by the plea in which the defend-
ant who was sued as surety set up that there was no consideration for
his signing this note or the note of which it was a renewal;  that he
signed as an accommodation indorser at the request of the president of
the bank to which it was payable, the president stating that he, for the
bank, would guarantee that the defendant would not be called upon to
pay it;  and that at the time of his signing the original note the presi-
dent represented to him that the maker was able to pay it, but this
representation was untrue and was made with intent to deceive and did

deceive him, and that without such statement he would not have signed the note.

The court did not err in striking the plea or in thereafter directing a verdict for the plaintiff.

DECIDED DECEMBER 12, 1922.

Complaint; from city court of Savannah — Judge Freeman. May 22, 1922.

The action was by the State superintendent of banks, for the use of the Commercial Bank of Savannah, against Ehrlicher, as maker, and Haymans, as surety, upon a promissory note to the bank, signed by Ehrlicher and bearing on its back the signature of Haymans. Haymans filed an answer admitting the execution of the note and the indorsement, and alleging that he was not liable thereon, because there was no consideration therefor to him or to the maker; that before the execution of this note the maker was indebted to the bank on an unindorsed and unsecured note, and that one day when he (Haymans) was in the bank the president of the bank asked him to indorse that note, as a favor to him (the president) and to the maker, the president saying that he wanted to make the note a bankable paper, that is, a two-name paper, so as not to be criticised by the bank examiner or the finance committee, and that he (the president), for the bank, would guarantee that the defendant would not be called on to pay it, and that it would not even be charged against his account in the bank; that, relying upon this assurance of the president, acting for and on behalf of the bank, and without any consideration flowing to him or to the maker, he signed that note as an accommodation indorser; that from time to time thereafter he signed renewal notes, of which the note sued on was one, and that at no time of signing did any consideration therefor flow to him or to the maker; and that the bank from time to time recognized that he was not liable on this note and " assented thereto;" that at the time of his signing the first note as aforesaid the president of the bank represented to him that the maker was able to " take care of " the note,— that is, to pay it,— and would do so; that this representation was untrue; that the maker was not able to take care of it, and his inability to do so was known to the said president and not known to defendant; that the said statement was made with intent to deceive and did deceive defendant, and that without such statement he would not have signed the note.

The court, on motion of the plaintiff, struck the answer, and, after the note and the admissions of the answer had been introduced in evidence, directed a verdict for the plaintiff. Haymans thereupon excepted.

*George H. Richter,* for plaintiff in error.

*LaFayette McLaws,* contra.

BLOODWORTH, J. "An extension of time by a creditor to his principal debtor is a sufficient consideration to support the indorsement of a note renewing the original debt. The court committed no error in striking defendant's pleas and in directing a verdict against him." *Hollingshead* v. *American National Bank,* 104 *Ga.* 250 (2) (30 S. E. 728). "The extension granted by the creditor in taking the joint promissory note of the defendants for the antecedent debt of one of them was sufficient consideration to support the promise of the other." *Jones* v. *Southern Mortgage Co.,* 23 *Ga. App.* 567 (99 S. E. 42). "An agreement by the president and cashier of the Bank of the United States that the indorser of a promissory note shall not be liable on his indorsement, does not bind the bank. It is not the duty of the cashier and president to make such contracts; nor have they the power to bind the bank except in the discharge of their ordinary duties." Bank of the United States *v.* Dunn, 31 U. S. (6 Peters) 51 (8 L. ed. 306). "The president of a bank has no authority to promise that the maker of paper which he discounts as such president need not pay it or that the bank will not enforce it." *Swindell* v. *Bainbridge State Bank,* 3 *Ga. App.* 370 (60 S. E. 16). "We know of no principle, nor has any decision been called to our attention which supports the proposition that a written promise may be defeated by proof of an oral agreement not to enforce it. The decisions are to the contrary." *Sasser* v. *McGovern,* 11 *Ga. App.* 89 (74 S. E. 798). "In a suit by a bank against endorsers of a note discounted for the accommodation of the drawer, the affidavit of defence was that 'at and before the time that defendants endorsed the note,' they inquired of the cashier and one of the directors of the bank whether it would be safe for them to endorse, and that these officers informed them that they considered the drawer perfectly good, and they would be safe in endorsing; that the officers knew the representations to be false, and that they made them to deceive defendants, who would not have endorsed but for the representa-

tions. Held to be insufficient." Mapes v. Second Nat. Bank, 80 Pa. 163. See, in this connection, Civil Code (1910), § 4308; *Crooker* v. *Hamilton, 3 Ga. App.* 190 (3) (59 S. E. 722); *Turner* v. *Strauss-Epstein Co.,* 20 *Ga. App.* 735 (3) (93 S. E. 234); *Johnson* v. *Cobb,* 100 *Ga.* 139 (28 S. E. 72); Thompson v. McKee, 5 Dakota, 172 (2) (37 N. W. 367).

Under the rulings in the foregoing cases the court did not err in striking the plea or in directing a verdict for the plaintiff.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*